Frost, J.
delivered the opinion of the Court.
Whatever diversity of opinion may have prevailed before, respecting the liability of the creditor to provide for the maintenance of his debtor, imprisoned at his suit, the Act of 1839 has put the question at rest. It may be safely affirmed that the law of this State never did permit a creditor to imprison and starve his debtor, as a means of coercing from the debt- or the payment of his debts or the surrender of his property, though perversely or fraudulently withheld from his creditor. Such a measure of coercion would be inhuman, and therefore cannot be lawful. It would be prevented by the constitutional prohibition of cruel punishments. For the most aggravated offences against society, less than capital, imprisonment is deemed a punishment sufficiently severe for correction and example. Criminals, sentenced to imprisonment, are maintained in jail by the State. It is surely enough for the security of public credit, and of the individual creditor, that if a debtor is guilty of fraud in the schedule which he may exhibit of his property, for his discharge from arrest, under the insolvent laws, he may be subjected to imprisonment for life, at the will of the creditor, under whose process he may be arrested. It is highly important to sustain credit and suppress fraud, but even these objects cannot be effected by means so barbarous as the denial of sustenance to prisoners who may be accused or even be guilty of dishonest practices. The case is stated thus strongly because, if the law denies support to a prisoner for debt, the purpose of such denial must be to compel him to satisfy the demands of his creditors, under pain of remaining confined without provision for his wants. It cannot be intended to throw his sup-poit on private or public charity — that would be an arbitrary and unjust imposition, and a dependance too uncertain and precarious to be regarded as a legal provision for the maintenance of the prisoner. The creditor, at whose suit the debt- or is confined, is the only person whom the law can properly *164 charge with his support. If it be true that the creditor is not bound to maintain him, then, as said by C. J. Montague, in Dive v. Manningham, “ the jailor is not bound to find him meat, but he must live of his own; and if he has no goods of his own, he shall live by the charity of others; and if others will give him nothing, let him die, in the name of God.”
1 Plow. 68.
3Brev. 297.
2 N. &McC.
C Stat. 6'G.
The impression that the creditor is not bound to maintain his debtor, seems to have been inconsiderately adopted from the opinion expressed by two Judges, in McLain v. Hayne, that the sheriff was bound to keep his prisoner, arrested for debt, in safe custody, in his jail; and that he was not bound to supply him with food, unless he was paid for it; and that the discharge of a prisoner, under the pretence that he was unable to pay for his sustenance, or otherwise procure it, and because the plaintiff refused to pay for his food, or to give security to do so, was illegal, and rendered the sherifF liable for a voluntary escape. It does not appear that the other Judges concurred in this view of the law. Judge Nott very elaborately maintained that, by the common and statute law of this State, the creditor was bound to maintain his debtor in jail. Afterwards, in Caldwell v. Boyd, it was adjudged by the whole Court, that the plaintiff was liable to the sheriff for the amount of jail fees, due for the detention of his debt- or. It was declared to be the common law liability, without any reference to the Acts on the subject. That conclusion seems to be well supported also by legislative enactment.— The insolvent debtor’s Act (1759) provides that “ the creditor or creditors, at whose suit such person shall be arrested and imprisoned, who shall be admitted to the benefit of the said Act, shall be and are heieby declared liable for and chargeable with the fees, due to the Provost Marshall, on account of the arrest and imprisonment of such debtorand the as-signee is required to re-imburse the creditor the amount of charges he may have paid. The Act of 1839 is a transcript of the clause in the county Court Act, with the addition only oí ten days, as the prescribed notice to the creditor, which, by the Act of 1785, was left indefinite. Soon after the. case McLain v. Huyne, the Act of 1817 was passed. It is recited to be “ expedient that some provision should be made for the support of prisoners confined for debt, that it might be distinctly known in what manner and at whose expense such prisoners are to be maintainedand it is then enacted that in case of the inability or refusal of the debtor to pay for his maintenance in jail, or in the prison bounds, such fees as may be allowed to the sheriff, the same shall be paid by his assignees ; and if they have not sufficient, the said fees shall be paid by the party who made the arrest; and an action is given to the sheriff against such party, for the recovery *165 of them. By the second section, it is provided that if the person arrested by mesne or final process, shall neglect or refuse to surrender his effects in favor of his creditors, and avail himself of the benefit of the insolvent Acts, that the sheriff shall not be liable to provide for the diet and subsistence of the prisoner “unless the fees, chargeable for such maintenance, be paid or tendered to him, at the expiration of every week.” By whom the tender is to be made, whether by the debtor or the creditor, the Act is silent, and leaves the charge to be a subject of construction. By the first section, if the debtor was unable or refused to pay the fees for his maintenance, they were first charged on his assigned effects, and if these proved insufficient, upon the suing creditor. By the second section, if the debtor refuses to surrender his effects and take the benefit of the Act, the. sheriff shall not be bound to maintain him, unless his fees are weekly paid or tendered. It would seem, in such case, that the creditor who was-made chargeable with the maintenance of the prisoner, by the first section, was the person who should make the tender.
The Act of 1839 provides that “ if any person shall be taken on mesne or final process in any civil suit,” “ and is committed to jail; and such person has no lands, goods, chattels or choses in action whereby his maintenance in jail can be defrayed, the plaintiff, or person at whose instance such parly shall be imprisoned, shall pay and satisfy the same; and if such person or his attorney shall refuse or neglect, after ten days notice, to pay or give security to pay the same, when demanded, the sheriff or jailor, in whose custody such prisoner is, may discharge him from such confinement; provided, however, that such prisoner shall, before he is discharged, render on oath a schedule of all his estate, and assign the same.”
In construing this Act it must be borne in mind that, by the common law of this State, the creditor is bound to support his debtor in jail, who is unable to maintain himself; and that, without the most distinct and unequivocal declaration to that effect, it cannot be assumed to be the intention of the Legislature to subject the debtor to the power of his creditor, to the extent that he may coerce his debtor by imprisonment and starvation, to satisfy his demand or surrender his property in satisfaction of his debt.
The first question that is presented, in the application of the Act to the case under consideration, is, what is meant by the provision, “ and such person has no lands, goods, <fcc. whereby his maintenance in jail can be defrayed.” The question is between the creditor and the sheriff, in effect, for the prisoner must be supported at the expense of one or the other of them. The Act must be construed to mean such lands, goods, &c. as the sheriff can make, available to defray *166 the expense of keeping the prisoner. If not so construed, it can on[y mean that the plaintiff shall not- be liable if the prisoner has lands, goods, <fcc. any where, in any foreign ju-riS(jjct¡on ■ and though they be not in the power of the debt- or himself. The Act would then have effect, as if the words “ whereby his maintenance in jail may be defrayed,” were struck out. The sheriff has no option, but is bound to receive and keep the prisoner. He has no interest in his detention, nor power to control it.
If then the debtor has lands, goods, &c. but which, from any cause, cannot be reached to defray his maintenance in jail, who should, in the first instance, be charged with his maintenance, and on whom should the expense and risk of pursuing and recovering such effects fall? Obviously, it would seem, on the creditor. If the Act be construed in reference to the alternate liability of the creditor or the sheriff, to maintain the prisoner, the just and proper construction of the provision — “ by which his maintenance in jail can be defrayed,” must be by which the sheriff can defray the prisoner’s expenses.
The next subject of construction is the proviso, that the prisoner, before he is discharged, shall render on oath a schedule of all his estate, and assign the same. The prisoner did tender a schedule of all his estate, and an assignment to the plaintiff, including all his right and title to certain ne-groes and money, which, on the trial of a suggestion of fraud, the jury found that the defendant had falsely omitted in his first schedule, or had fraudulently removed. The assignment tendered transfers to the plaintiffs all the right of the prisoner in that property; with power to sue for and recover the same. It does not appear that the prisoner can do more. Such an assignment must satisfy the requirement of the Act ; if it does not, the prisoner must remain in jail. The plaintiff is not bound to provide him food and other necessaries of life ; nor is the sheriff. The prisoner cannot provide for his own support; and must starve, according to law. But such conclusion cannot be justified without an explicit and unequivocal expression of the intentioh of the Legislature — -such asdhe Act does not contain.
■ In the absence of any proof to the contrary, the Court is of opinion that the affidavit of the prisoner and the jailor was sufficient evidence of the want of any “ lands, goods,” &c. by which the expenses of the sheriff, in maintaining the prisoner, could be defrayed ; and that the assignment which was tendered, was sufficient, under the Act, to justify the discharge of the prisoner, if the plaintiffs refused to pay or to give security to pay the charges of the sheriff, for maintaining him in jail.
The motion to reverse the order of the Circuit Judge, is *167 granted ; and it is ordered that the sheriff do proceed, de novo, under the Act, and give the plaintiffs the required notice; and on the failure of -the plaintiffs to comply with the provi-1 sions of the Act, that the prisoner be discharged, on his performing the conditions prescribed.
O’Neall, J. — Evakts, J. — and Withers, J. — concurred.

Motion granted.